East New York Sanitary Bagel Bakery, Inc. v. Commissioner.
East New York Sanitary Bagel Bakery, Inc. v. Commissioner
Docket No. 61472.
United States Tax Court
T.C. Memo 1957-144; 1957 Tax Ct. Memo LEXIS 100; 16 T.C.M. (CCH) 624; T.C.M. (RIA) 57144; July 31, 1957
*100 Vincent B. Lewin, Esq., for the petitioner. Anthony S. Del Guidice, Esq., for the respondent. TIETJENS
Memorandum Opinion TIETJENS, Judge: The Commissioner determined deficiencies in the petitioner's income tax for the years 1948, 1949 and 1950 and made additions to the tax for fraud and for failure to file timely returns; he also made additions to the petitioner's 1951 income tax for fraud and for failure to file a timely return, as follows: I.R.C. 1939
Additions to the Tax
Section
Section
Year
Deficiency
293(b)
291(a)
1948
$20,512.78
$10,256.39
$5,128.19
1949
17,105.17
8,552.59
4,276.29
1950
26,828.65
15,589.54
7,794.77
1951
397.03
198.51
The petitioner, East New York Sanitary Bagel Bakery, Inc., is a corporation organized and existing under the laws of the State of New York, with its principal office located in Brooklyn, New York. The petitioner filed its income tax returns for the taxable years with the district director of internal revenue for the Brooklyn district of New York. The returns were filed on April 22, 1954, which date was after the expiration of the period of time prescribed by law *101 for the filing of those returns. The petitioner's officers thought that the employee who filed its payroll tax returns also filed its income tax returns during the taxable years. That employee however thought that the petitioner's regular accountant filed the income tax returns. Consequently timely tax returns were not filed by the petitioner for the taxable years. However, in 1954 delinquent income tax returns for the taxable years were filed by the petitioner. The returns were prepared by an employee of the petitioner with the help of one of the revenue agents who investigated the petitioner and the amount of gross income reported was arrived at by using a formula developed after an investigation of the bagel industry by the Internal Revenue Bureau. The income tax returns showed deductions for wages in the amounts of $89,073.18 in 1948, $101,825.23 in 1949, $109,569.85 in 1950 and $110,653.25 in 1951. However, the petitioner's payroll tax returns only showed wages paid in the amounts of $34,984.68 in 1948, $38,569.50 in 1949 and $41,386 for 1950. Wages shown on the payroll tax returns for 1951 agreed with the deduction claimed for wages on the 1951 income tax return. The Commissioner *102 disallowed the wages claimed in excess of the amount of wages shown on the petitioner's payroll tax returns. The petitioner's sales, wages allowed and the percentage of such wages to the sales, for the years 1948 through 1951, were as follows: Wages
Per-
Year
Sales
Allowed
centage
1948
$160,289.76
$ 34,984.68
22
1949
184,991.80
38,569.50
21
1950
196,830.80
41,386.00
21
1951
200,347.20
110,653.25
55
Inferences derived from the petitioner's cross-examination of the Commissioner's witnesses, who were called to prove the fraud issue, make the petitioner's position more understandable. It was inferred that in the bagel baking industry in New York, it was a "custom" to pay the workers a part of their wages in cash, which amounts were not reported on the payroll tax returns, and that the petitioner followed this custom in 1948, 1949 and 1950. When the industry was investigated by the Internal Revenue Bureau in 1951, the cash wage custom was abruptly discontinued, thus accounting for the sharp increase in wages reported on the 1951 payroll tax returns. It was also inferred that although the petitioner could not directly prove the amount of *103 cash wages paid in 1948, 1949 and 1950, that amount could indirectly be proven because bagel bakers were paid on a piece work basis and thus all that one needed to know was the number of bagels sold, which could be determined from the bagel sales reported on the income tax returns. The petitioner, however, offered no direct evidence on the question of the deficiency which was based solely on the disallowance of wages as shown above. The petitioner argued that its income tax returns would speak for themselves and that it would be apparent from comparing the returns for 1948, 1949 and 1950, with the return for 1951, that the petitioner must have had additional payroll in the former years. Aside from the fact that petitioner could not directly substantiate the wages claimed on the returns, there is nothing in the record to show fraud. The failure of the petitioner to call any witnesses or introduce any direct evidence to support its position leaves us no choice but to sustain the deficiencies determined by the Commissioner, and we so held at the conclusion of the hearing of this case. At that time we also held that the Commissioner had failed to sustain his burden of showing by clear *104 and convincing evidence that the petitioner's income tax returns for the taxable years were fraudulent with intent to evade tax. The additions to tax for failure to file timely returns were conceded by the petitioner to be proper. Decision will be entered under Rule 50.