Frank J. VALETTI and Sarah J. Valetti, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

Nos. 12562–12564.

United States Court of Appeals
Third Circuit.

Argued Sept. 15, 1958.

Decided Oct. 17, 1958.

Paul W. Knox, Philadelphia, Pa. (John P. Knox, Rambo, Knox & Landreth, Philadelphia, Pa., on the brief), for petitioners.

Morton K. Rothschild, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Melva M. Graney, Morton K. Rothschild, Attys., Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before GOODRICH, STALEY and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

This is an appeal by a taxpayer[1] from decisions of the Tax Court determining deficiencies in his income taxes for the four years 1948 to 1951, inclusive, and imposing fraud and underestimation penalties. The Commissioner had found even larger deficiencies than did the Tax Court. However, only the taxpayer has sought a review of the Tax Court's decisions.

Petitioner is a ship chandler. The entire basis of this tax controversy is a group of some 600 similar items claimed by the taxpayer as deductible business expenses in his tax returns over the four year period. Each item is said to represent a commission actually paid by the petitioner to a ship's officer in connection with a sale of merchandise by the petitioner to the ship.

This business practice is confirmed and described as follows in the findings of the Tax Court:

"A universal custom existing, not only in the United States but throughout the world, is that chandlers, such as petitioner, pay a so-called commission to the officers of ships. Commissions usually average 5 per cent of the bill for the merchandise sold. In some instances a commission would amount to 7½ to 10 per cent, and in an unusual situation would be as high as 15 per cent. The owners of the ships knew such commissions were being paid. A chandler could not remain in business if he failed to observe the custom and pay a commission to ships' officers."

It also appeared that it was customary to make these payments in cash and that it was not customary for the recipients to give receipts. In these circumstances it was the practice of the taxpayer to retain a business record of each commission in the form of his own voucher executed and placed in the records of his business shortly after the transaction occurred. In the language of the Tax Court, each such voucher showed "the date of payment, the name of the ship,

---

[1]. Although the petitioning taxpayers are a husband and his wife who filed joint income tax returns, the husband alone conducted the enterprise here in question and the case will be discussed as if he were the sole taxpayer.

the name of the officer, and the amount allegedly paid."

It is conceded that all 600 of these similar transactions were covered by such individual entries as the Tax Court described. However, these commissions as recorded by the taxpayer and claimed as deductions on his tax returns over a four year period totaled almost $250,000 on sales aggregating some $2,000,000, or about 14%. This contrasted with testimony of chandlers and others which, in the view of the Tax Court, showed that the normal commission payment on this kind of business was only 5% of the sale price, or slightly higher. It is this evidence of the practice and experience of the trade upon which the Commissioner has grounded his challenge to the claimed deductions as grossly excessive. On the basis of this evidence of the normal and customary percentage relationship between sale price and commission, the Tax Court found that the commissions actually paid by the taxpayer aggregated 7½% of the total price of the goods sold, rather than the 14% reflected by his claimed deductions. In addition, the Tax Court concluded that in each year there was fraud in the claiming of expenditures for commissions in excess of 7½% of total sales. The Tax Court computed the deficiency for each year by substituting 7½% of sales for the amount claimed by the taxpayer as the proper deduction for commissions. In addition, fraud penalties and penalties for underestimation of tax were assessed for each year.

■■ We find adequate basis for the Tax Court's findings of deficiencies and for the resultant assessment of underestimation penalties. It is the burden of a taxpayer who institutes such a suit as this to overcome the presumption that the Commissioner's deficiency finding was correct by showing by a preponderance of evidence that the Commissioner erred. Snell Isle v. Commissioner, 5 Cir. 1937, 90 F.2d 481. In this case the taxpayer did introduce relevant evidence in support of the deductions claimed in his tax return and disallowed by the Commissioner. This showing took the form of his business entries, apparently regularly made at or about the time of 600 separate transactions, showing in each case the amount paid, the payee's name, and the ship served. Of course these were self-serving records, as entirely legitimate and proper business entries often are. Yet, as detailed, informative and approximately contemporaneous records of many individual business transactions they are significant and probative, but subject to challenge and contradition. The government undertook such a challenge here by establishing that the commissions normally and customarily paid were much smaller than what the taxpayer's records showed. From this the fact finder was asked to infer that the taxpayer recorded and reported substantial overstatements of commissions.

■ When it is considered that the taxpayer bore the burden of proof, that his own records of commissions paid, though relevant and competent evidence, were self-serving, and that other evidence did indicate that the total commission payments claimed were above the usual experience of this business, we conclude that the Tax Court had an adequate evidentiary basis for its findings of deficiencies, and must, therefore, be sustained. Helvering v. Kehoe, 1940, 309 U.S. 277, 60 S.Ct. 549, 84 L.Ed. 751. Moreover, in each year the deficiency was a substantial one warranting the imposition of the statutory penalty for underestimation of income. Indeed, as taxpayer properly concedes in his reply brief, "the question about underestimation follows the denial or allowance of the commissions."

The fraud finding raises and depends upon quite different considerations. The question of fraud is of critical importance because the deficiencies claimed for 1948 and 1949 are barred in their entirety by the statute of limitations unless fraud is established. For 1950 and 1951 the deficiencies as determined by the Tax Court must be reduced to eliminate fraud

penalties if the fraud finding is not supported.

The record does not justify the Tax Court's fraud finding for any of the taxable years. We think the Tax Court fell into error by failing to give full effect to the great difference between the evidentiary burden which the law imposes in connection with the adjudication of a deficiency claim and that imposed for resolving a claim that a taxpayer's understatement of his tax liability has been fraudulent.

■ We have already mentioned the presumption in favor of the Commissioner's finding of a deficiency and the resultant burden of proof upon the taxpayer who challenges an administrative deficiency finding. But on the issue raised by a claim that a taxpayer's understatement of income has been fraudulent the burden of proof is shifted and increased. On this issue the goverment bears the burden of proof, and a much heavier one than a taxpayer bears in challenging a deficiency assessment. Indeed, it is an explicit statutory requirement in accordance with what this court held some thirty years ago, that "in any proceeding involving the issue whether the petitioner has been guilty of fraud with intent to evade taxes, the burden of proof in respect of such issues shall be upon the Commissioner." 26 U.S.C. § 1112; Cf. Budd v. Commissioner, 3 Cir., 1930, 43 F.2d 509. Thus, "[t]he doubts in the record which operate against the petitioner as to the deficiency because the burden of proof is upon him are also effective to operate against the respondent [Commissioner] upon the issue of fraud because the burden is upon him." Godwin v. Commissioner, 1936, 34 B.T.A. 485, 494. Beyond this, the government must establish its claim of fraud by something impressively more than a slight preponderance of evidence. On the whole case fraud must be clearly and convincingly established. Goldberg v. Commissioner, 5 Cir., 1956, 239 F.2d 316. Kashat v. Commissioner, 6 Cir. 1956, 229 F. 2d 282. In these circumstances it is not surprising that in tax cases involving both a deficiency adjudication and a fraud penalty, the government often prevails on the deficiency question but, the same evidence considered, fails on its fraud claim. Olinger v. Commissioner, 5 Cir. 1956, 234 F.2d 823; Hawkins v. Commissioner, 6 Cir. 1956, 234 F.2d 359. East N. Y. Sanitary Bagel Bakery v. Commissioner, 1957, 16 T.C.M. 624. This is such a case. For reasons already stated the deficiency finding is adequately supported. But clear and convincing proof of fraud is lacking.

■ A reasonable man contrasting the taxpayer's records of commissions paid with testimony concerning the experience of others in the same business could find himself very doubtful about the accuracy of the taxpayer's records. But clear proof of fraud is a different matter. It is not enough that an apparent discrepancy between the large commissions shown by the taxpayer's records and the smaller commissions said to have been paid by other chandlers permitted, though it did not require, an inference of error in the taxpayer's records. This permissive inference was not an adequate base upon which to build a second inference that the inferred error was made with fraudulent intent to evade income taxes, in a situation where this ultimate conclusion had to be established in a clear and convincing way. "Although the existence of fraud may be gathered from circumstances, the piling of inference upon inference hardly qualifies as the clear and convincing evidence by which fraud must be proved." See Goldberg v. Commissioner, supra, 239 F.2d at page 320.

An entirely different consideration also helps make the proof of fraud much less than clear and convincing in this case. The taxpayer's records, as prepared at about the time of each transaction, were precise and detailed in their disclosure of the name of each payee, his ship, and the amount paid. Each named payee knew better than anyone else how much he received and it certainly would not be in the interest of these ships' officers to join in any exaggeration of their com-

missions. During the several years which elapsed from the first investigation of these 1947, 1948, 1949 and 1950 returns until the Tax Court trial of this controversy in 1956, it must have been feasible for the Commissioner to have obtained, by deposition or otherwise, the testimony of some of the named payees concerning the accuracy of the vouchers reciting specific payments to them. True, many of the payees were officers of foreign flag ships and many of them undoubtedly could not easily be located or persuaded to testify. But there were more than 600 individual payments recorded. It is difficult to believe that 60, or even 6, of the individual payees could not have been found and examined so as to provide a significant direct check on the accuracy or inaccuracy of the taxpayer's vouchers. Yet, the present record shows no effort to check with the payee named in even one of the 600 vouchers. When the Commissioner thus disregards the most obvious source of direct evidence and relies solely upon inference based on general experience it is particularly difficult to accept his proof as clear and convincing. Cf. Fairchild v. United States, 5 Cir. 1957, 240 F.2d 944, 948; East N. Y. Sanitary Bagel Bakery v. Commissioner, supra.

Finally, we have considered an argument that the Tax Court's ultimate conclusion as to fraud in this case is supported by its finding that on an earlier occasion the taxpayer settled an income tax deficiency claim by paying a sum which included a fraud penalty. But cf. McLaughlin v. Commissioner, 1933, 29 B.T.A. 247, 249. However, there is clear and undisputed testimony in this record that the settlement in question was made on the basis of a negotiated lump sum figure. After bargaining had thus yielded a figure acceptable to all concerned, the Commissioner made an ex parte administrative allocation of this sum between taxes and penalties. But the taxpayer was unaware that this administrative allocation included a fraud penalty and signed a Form 870 consent and waiver without knowing that he was formally accepting a fraud penalty. In these circumstances, we think this episode adds nothing of significance to the Commissioner's present effort to prove fraud.

The decisions of the Tax Court will be reversed and the controversy remanded for further proceedings consistent with this opinion.