FLOYD T. HUNTINGTON AND JEAN R. HUNTINGTON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Huntington v. Commissioner
Docket No. 7907-80.
United States Tax Court
T.C. Memo 1982-227; 1982 Tax Ct. Memo LEXIS 520; 43 T.C.M. (CCH) 1223; T.C.M. (RIA) 82227; April 28, 1982. Floyd T. Huntington and Jean R. Huntington, pro se. James A. Nelson, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined deficiencies in petitioners' Federal income taxes and additions to tax as follows: Floyd T. Huntington
Additions to Tax
Sec. 6651(a),
Sec. 6653(a),
Sec. 6653(b),
Year
Deficiency
I.R.C. 1954
I.R.C. 1954
I.R.C. 1954
1972
$ 2,630
$ 500 $ 132
1974
412
[1] (34)
45
1975
900
15 45
1976
910
67 46
1977
2,669
$ 1,335
*521 Jean R. Huntington
Additions to Tax
Sec. 6651(a),
Sec. 6653(a),
Sec. 6653(b),
Year
Deficiency
I.R.C. 1954
I.R.C. 1954
I.R.C. 1954
1972
$ 2,164
$ 383
$ 108
1973
74
4
1974
392
72
22
1975
1,098
64
55
1976
1,096
114
55
1977
2,967
$ 1,484
The issues for decision are as follows: 1. Whether respondent correctly determined the amounts of petitioners' taxable income in each of the years 1972 through 1977; 2. Whether petitioners' failure to file timely income tax returns for 1972 through 1976 was due to reasonable cause and not due to willful neglect within the meaning of section 6651(a); [1]
3. Whether any part of petitioners' underpayments of taxes for 1972 through 1976 was due to negligence or intentional disregard of the rules and regulations within the meaning of section 6653(a); and 4. Whether any part of petitioners' underpayments of taxes for 1977 was due to fraud within he meaning of section 6653(b). FINDINGS OF FACT At the time the petition was filed *522 and during the years in controversy, 1972 through 1977, petitioners Floyd T. Huntington and Jean R. Huntington were legal residents of the State of Washington. For 1972, 1974, and 1977, petitioners filed Forms 1040 on which they furnished no information regarding their taxable income or deductions. Most of the spaces on these Forms 1040 calling for income or deduction information referred to a note at the foot of most of the pages of the forms. The note stated, among other things: "We object to this question and respectfully refuse to answer it." In other similar blank spaces were the words: "Object: Self Incrimination." For 1973, 1975, and 1976, petitioners filed similar Forms 1040 or no Forms 1040. During 1972 through 1977, Mrs. Huntington received compensation from her employers as follows: Year
Employer
Amount
1972
Northgate General Hospital
$ 9,506.91
1973
Northgate General Hospital
6,005.32
1974
St. Helen Hospital
1,931.89
1975
St. Helen Hospital
14,668.51
1976
St. Helen Hospital
13,964.42
1977
St. Helen Hospital
18,893.32
Mrs. Huntington filed a Form W-4E with her employer, St. Helen Hospital, stating that she had no income tax *523 liability for 1976 and anticipated that she would incur no such liability for 1977. During 1972 petitioners received taxable income in he amount of $ 15,310 from the sale of silver. During 1973, they received taxable income in the amount of $ 1,375 from the sale of their personal residence. During 1974, 1976, nd 1977, Mr. Huntington received taxable income from personal services as follows: Year
Employer
Amount
1974
Modern Guide to Buying, Inc.
$ 5,623.92
1976
Uhlmann Motors, Inc.
4,297.40
1977
Norwester Restaurant, Inc.
8,000.00
1977
Associated Insurance Marketing, Inc.
4,500.00
In 1977, Mr. Huntington filed a Form W-4E with his employer, Associated Insurance Marketing, Inc., stating that he incurred no liability for income tax for 1976 and anticipated that he would incur no liability for income tax for 1977. He falsely stated to his employer that he was exempt from tax because of a net operating loss that he had sustained in the operation of a restaurant. Mr. Huntington's employer consulted his accountant who questioned the correctness of Mr. Huntington's statement. Mr. Huntington later admitted to his employer that he did not have a net *524 operating loss to carry forward. His employer threatened to fire him unless he corrected his Form W-4E. Mr. Huntington later gave his employer a statement claiming six exemptions. Respondent determined the deficiencies and additions to tax set forth above by treating petitioners' salaries and other income as community property under the laws of the State of Washington. OPINION Petitioners' employment income in 1972 through 1977 described in our findings is documented by reports filed with the Internal Revenue Service by their employers. We have no reason to question the accuracy of those reports. The residence and silver sales transactions from which they realized gain in 1972 and 1973 were investigated by the Internal Revenue Service agents, and information on which the determinations were based was obtained from third-party sources. Respondent's determinations with respect to these items are set forth explicitly in the notices of deficiencies. Although both petitioners were in the courtroom when the agents' testimony regarding their investigations and a former employer's testimony were given, neither one of petitioners took the witness stand to refute the determinations. *525 Because the burden of proof rests with petitioners, Welch v. Helvering,290 U.S. 111 (1933), respondent's determinations as to the deficiencies in Federal income taxes are sustained. The additions to tax under section 6651(a)(1) [2] also must be sustained. The law is now settled that Forms 1040 which do not contain information with respect to a taxpayer's income on which a tax may be computed do not constitute income tax returns. United States v. Edelson,604 F.2d 232, 234 (3d Cir. 1979); United States v. Johnson,577 F.2d 1304, 1311 (5th Cir. 1978); United States v. Klee,494 F.2d 394, 397 (9th Cir. 1974); United States v. Porth,426 F.2d 519, 523 (10th Cir. 1970). Thus, the Forms 1040 filed by petitioners for some or all of the years in controversy are not income tax returns for the purposes of section 6651(a)(1), and that section imposes an addition to tax if the taxpayer fails to file a timely return unless "it is shown that such failure is due to reasonable cause and not due to willful neglect." Petitioners offered no evidence to show that their failure to file returns was due to reasonable *526 cause; in the absence of any explanation, we think it clear that the facts set forth in our findings spanning the 6 years here in controversy, particularly petitioners' participation in "tax protestor" activities, show that they willfully neglected to file returns for each of the years 1972 through 1977. E.g., Parker v. Commissioner,365 F.2d 792, 800 (8th Cir. 1966), affg. in part, revg. in part, and remg. a Memorandum Opinion of this Court. Section 6653(a) calls for the *527 imposition of an addition to tax if any part of an underpayment is "due to negligence or intentional disregard of rules and regulations." Petitioners offered no evidence to show that the section 6653(a) additions to tax do not apply. See Bixby v. Commissioner,58 T.C. 757, 791-792 (1972). Indeed, the evidence demonstrates an "intentional disregard" of and persistent refusal to abide by the revenue laws generally as well as the rules and regulations issued thereunder. Cupp v. Commissioner,65 T.C. 68, 81 (1975), affd. per order 559 F.2d 1207 (3d Cir. 1977). There remains the issue as to whether any part of the underpayment for 1977 was "due to fraud" within the meaning of section 6653(b). The burden of proof rests, of course, with respondent on this issue. "The fraud meant is actual, intentional wrongdoing, and the intent required is the specific purpose to evade a tax believed to be owing." Mitchell v. Commissioner,118 F.2d 308, 310 (5th Cir. 1941, revg. and remg. 40 B.T.A. 424 (1939); Estate of Temple v. Commissioner,67 T.C. 143, 159 (1976). We think respondent has carried that burden. *528 The record shows that petitioners filed an income tax return for 1971 in which Mrs. Huntington reported a substantial salary and Mr. Huntington reported income from a sales business. They both thus knew their duty under the law to report their income and pay the applicable tax. For the 6 years before the Court, including 1977, they did not file income tax returns. The courts have taken repeated understatements of income over a period of years as evidence of an intent to evade tax. E.g., Estate of Mazzoni v. Commissioner,451 F.2d 197, 202 (3d Cir. 1971), affg. a Memorandum Opinion of this Court; Schwarzkopf v. Commissioner,246 F.2d 731, 734 (3d Cir. 1957), affg. a Memorandum Opinion of this Court. The failure to file any income tax returns at all for 1972 to 1977 without explanation is equally persuasive evidence of fraud. It might be argued that petitioners' objective was to protest the income tax, not to evade it. We are satisfied, however, that petitioners were sufficiently well informed in 1977 to know that their tax protest arguments (that the income tax laws violate the Fourth and Fifth Amendments to the Constitution, that wages are not *529 income under the Sixteenth Amendment, etc.) had no legal merit. The only reasonable inference is that they were simply attempting to evade their tax obligations. In 1977, both petitioners attempted to convince their respective employers to accept false withholding declarations which would have permitted them to receive their salaries without having any Federal income taxes withheld. Mr. Huntington sought to avoid withholding by representing to his employer that he would owe no income taxes because he had a large net operating loss carryover. Shortly after making this representation, when he and his employer were having a "couple of drinks," Mr. Huntington admitted to his employer that "he really didn't * * * have a net operating loss to carry forward, that he was a tax protestor"; he further stated to his employer that "the federal government had no right to take the money away from him." Mr. Huntington changed his filing status to claim 6 exemptions only after his employer threatened to fire him if he did not do so. Further, petitioners refused to cooperate with the Internal Revenue Service agents in the investigation of their income tax returns. They were specifically asked *530 to file a 1977 return and were repeatedly asked to provide information on their income, and they did not do so. The Internal Revenue Service agents were compelled to assemble information on petitioners' income from third-party sources and from reports filed by petitioners' employers. When petitioners were interviewed by a revenue officer in 1978, they had with them an individual introduced as Walter Froembgen (Froemben) and identified as a "constitutional consultant" who dominated much of the conversation. In addition to attempting to collect some delinquent taxes, the revenue officer urged petitioners to file 1977 Federal income tax returns. The officer testified: As I was preparing to leave after we had discussed the tax liability, he [Froemben, the "constitutional consultant"] indicated that anyone that attempted to collect taxes from him would face a 30-06. Later, the "constitutional consultant" wrote the revenue officer's group manager that the "revenue officers would have their legs broken if * * * [they] continued to pursue collection." It is true, as petitioners emphasized on cross-examination of respondent's witnesses, that they did not personally threaten physical *531 harm to the revenue officer, but it is equally true that they did not disassociate themselves from Froembgen's threats. We think the only reasonable inference is that petitioners hoped Froembgen's threats would intimidate the revenue officer and frustrate his law enforcement efforts. Moreover, petitioners have persisted even in this Court in their refusal to provide information on their income. Much of the information in the record consists of requests for admissions to which no response was made. See Freedson v. Commissioner,65 T.C. 333 (1975), affd. on other issues 565 F.2d 954 (5th Cir. 1978). Petitioners declined to stipulate additional facts. Although Mr. Huntington cross-examined each of respondent's witnesses extensively, neither petitioner testified as witnesses. In summary, the evidence is clear and convincing that both petitioners received substantial taxable compensation in 1977, that they sought to avoid having income taxes withheld from that income by making false representations to their employers, that they did not file tax returns reporting their compensation as income, that they sought to frustrate the investigation of their *532 income tax liability, and that they refused to furnish information on their income at either the administrative level or in this Court. Respondent has shown that petitioners' 1977 underpayments were due to fraud. To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. This figure is computed in the notice of deficiency as follows: ↩
Addition
$ 87 Less: Addition previously assessed
121 Net sec. 6651(a) addition
$ (34)
1. All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue, unless otherwise noted.↩
2. SEC. 6651. FAILURE TO FILE TAX RETURN OR TO PAY TAX. (a) Addition to the Tax.--In case of failure-- (1) to file any return required under authority of subchapter A of chapter 61 * * * on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate.↩