J.L. INDUSTRIES, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; JAMES L. LAYTON AND AMY S. LAYTON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
J.L. Industries, Inc. v. Commissioner
Docket Nos. 4011-86, 7886-86.
United States Tax Court
T.C. Memo 1987-531; 1987 Tax Ct. Memo LEXIS 523; 54 T.C.M. (CCH) 905; T.C.M. (RIA) 87531; October 19, 1987. Alan F. Segal, for the petitioners. John L. Comeau, for the respondent. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: In these consolidated cases, respondent determined deficiencies in and additions to petitioners' Federal income taxes as follows: Additions to Tax
I.R.C.
Docket No.
Year
Deficiency
Section 6653(b) [1]
J.L. Industries
1977
$  1,953
$ 2,080
4011-86
1978
4,755
2,378
1979
5,149
2,575
James L. and
1977
3,091
1,546
Amy S. Layton *
1978
7,147
3,574
7886-86
1979
10,059
5,030
*524 The issue to be determined is whether there are underpayments of tax due to fraud of James L. Layton, who was the president, treasurer, and sole shareholder of J.L. Industries, Inc. FINDINGS OF FACT Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. The principal office of petitioner J.L. Industries, Inc., and the residence of petitioners James L. and Amy Layton were in Illinois at the time their petitions were filed. Petitioner J.L. Industries, Inc. (the corporation), was incorporated in Rhode Island in 1974. During 1977, 1978, and 1979, the corporation was engaged in the business of selling railroad equipment and providing railroad consulting services to domestic and foreign companies. At all relevant times, James L. Layton (petitioner) was the president, treasurer, and sole shareholder of the corporation. Petitioner was the corporate officer responsible for all the business matters of the corporation, including preparation of corporate journals and ledgers. The corporation employed the cash method of accounting and adopted a taxable year ending December 31. The corporate bank account was maintained at *525 the First National Bank of Chicago. Prior to the years in issue, petitioner was employed by Worthington Corporation (Worthington). As an employee of Worthington, petitioner sometimes secured cash advances for travel expenses, and he accounted for such expenditures on vouchers submitted to his employer. In 1967 or early 1968 petitioner opened two personal bank accounts at the First National Bank of Barrington. One such account was labeled "J. L. Layton Special Account" (the Special Account). Petitioner deposited into the Special Account checks received from Worthington for advances or reimbursement of travel expenses. During the years in issue, the corporation performed services for various domestic companies and acted as an agent for certain Canadian companies. Customers of the corporation were billed both for services and for expenses incurred in travel on behalf of the customer. Checks received from domestic customers or for services billed to the Canadian customers were deposited in the corporate bank account in Chicago. Such deposits were entered in the cash receipts journal maintained by petitioner for the corporation. Invoices to Canadian companies for expenses *526 incurred on behalf of those customers were prepared for petitioner and contained "special instructions" that checks in payment of such invoices be payable to J. L. Layton and sent to his home address in Barrington. Such checks were deposited by petitioner in the Special Account. Funds in that account were disbursed toward various personal expenses of petitioner and his family. During the years in issue, income tax returns for the corporation were prepared by an accountant, and the individual tax returns for James L. and Amy Layton were prepared by another accountant with the same firm. None of those returns reported the reimbursement of expenses from Canadian companies deposited into the Special Account. Petitioner did not advise the accountants of the existence of the Special Account. The amounts of income and expenses reported on the corporate returns for 1977, 1978, and 1979 were taken from the journals and ledger maintained by petitioner for the corporation. In those records, petitioner listed as "travel and entertainment expense" cash advances made to him by the corporation in even dollar amounts. The accountant who prepared the corporate tax returns deducted the total *527 shown on the ledger as travel and entertainment expenses without requesting substantiating receipts or detailed breakdown of the expenses claimed. The gross receipts and travel and entertainment expenses reported on the corporate return and the unreported reimbursements for the years in issue were as follows: Reported
Unreported
Gross
Reported
Reimbursements
Year
Receipts
T & E Expenses
of T & E Expenses
1977
$  93,803
$ 19,037
$  8,018.82 1978
111,577
23,433
14,572.80
1979
161,596
26,825
18,127.86
The total amounts deposited in the Special Account represent gross receipts of the corporation and taxable income of petitioner and should have been reported by the taxpayers during the years in issue. In addition, during 1979, petitioner deposited into the Special Account a check for $ 600 commission income from a Canadian customer. That sum was not reported on the corporate or individual returns for 1979. In 1980, during the course of an audit of petitioners' tax returns for the years in issue, petitioner was requested to produce books and records of the corporation, including records of expenses incurred *528 for travel and entertainment. Petitioner prepared certain typewritten listings of expenses that previously had not been in existence, dated them to make them appear that they had been prepared during the years in issue, and presented them to the auditing agent as if they were contemporaneous records prepared during the years in issue. On April 16, 1984, petitioner entered a plea of guilty to filing false individual income tax returns for 1978 and 1979, in violation of section 7206(1). In relation to that plea, petitioner signed a Plea Agreement containing the following paragraphs: 8. In agreeing to plead guilty to these counts, JAMES L. LAYTON acknowledges and agrees that the following facts are true and that the United States could prove said facts beyond a reasonable doubt. He also stipulates to the admissibility of these facts and the documentary and other exhibits which would support them. Specifically, he agrees and admits: (1) As charged in Count One of the information, during the calendar year in 1978, he received $ 14,572 in payments from various Canadian clients which he knowingly and willfully did not include on the adjusted gross income line or taxable income *529 lines of his joint individual income tax return for 1978. These payments were obtained by directing his Canadian clients to reimburse him personally at his home address in Barrington, Illinois, for travel expenses he had incurred in connection with his business, but for which he had previously been paid from his company, J.L. Industries Inc., a corporation wholly owned by the defendant and his wife. He deposited these payments into the James L. Layton special account at the First National Bank of Barrington. He then did not inform his return preparer of these payments, therefore causing his return preparer to prepare a return which did not include these payments as income to the defendant in 1978. On April 11, 1979 he then signed and filed the individual income tax return for himself and his wife knowing that it was false in the statement of adjusted gross income and taxable income, because those lines did not include this additional income of $ 14,572. (2) In a similar manner, as charged in Count Two of the information, during the calendar year 1979, he received $ 18,727 in payments from various Canadian clients which he knowingly and willfully did not include in information *530 provided to his tax preparer for inclusion on the adjusted gross income and taxable income lines of his joint individual income tax return for 1979. On June 7, 1980 he signed his 1979 joint individual income tax return knowing it was false in the statement of gross income and taxable income because those lines did not include this additional income at $ 18,727. * * * 13. Defendant understands and agrees that nothing in this agreement shall limit the Internal Revenue Service in its collection of any taxes, interest or penalties from the defendant JAMES L. LAYTON AND J.L. Industries, Inc. The defendant agrees to cooperate fully with the Internal Revenue Service in its assessment and collection of taxes, interest and penalties from him and from J.L. Industries, Inc. (1) For purposes of determining his civil income tax liability and the civil income tax liability of J.L. Industries, Inc., the defendant admits that in 1977, 1978 and 1979, he listed as expenses on the books of J.L. Industries, Inc., his wholly owned corporation, the costs of his travel for Canadian clients. When Canadian clients reimbursed these expenses, he deposited them to his own account rather than crediting *531 them as income of J.L. Industries, Inc. In this manner, according to records presently available from the defendant and the corporation, he reduced the net income of J.L. Industries, Inc. by approximately $ 8,019 for 1977, $ 14,572 for 1978 and $ 18,727 for 1979. He then did not include these amounts as income to himself on his joint individual income tax returns for 1977, 1978, and 1979, although he knew they were taxable income, since he had not personally incurred any of the expenses for which they were intended as reimbursement. * * * OPINION The 50-percent addition to tax in the case of fraud is a civil sanction provided primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud. Helvering v. Mitchell,303 U.S. 391, 401 (1938). Respondent has the burden of proving, by clear and convincing evidence, an underpayment of tax and that some part of the underpayment for each year was due to fraud. Section 7454(a); Rule 142(b), Tax Court Rules of Practice and Procedure. This burden is met if it is shown that the taxpayer intended to evade taxes *532 known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Stoltzfus v. United States,398 F.2d 1002, 1004 (3d Cir. 1968); Webb v. Commissioner,394 F.2d 366, 377 (5th Cir. 1968), affg. a Memorandum Opinion of this Court. A fraudulent underpayment of taxes may result from an overstatement of deductions as well as an understatement of income. Hicks Co. v. Commissioner,56 T.C. 982, 1019 (1971), affd. 470 F.2d 87 (1st Cir. 1972); Neaderland v. Commissioner,52 T.C. 532, 540 (1969), affd. 424 F.2d 639 (2d Cir. 1970). The existence of a fraud is a question of fact to be resolved upon consideration of the entire record. Gajewski v. Commissioner,67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud will never be presumed. Beaver v. Commissioner,55 T.C. 85, 92 (1970). Fraud may, however, be proved by circumstantial evidence because direct proof of the taxpayer's intent is rarely available. The taxpayer's entire course of conduct may establish the requisite *533 fraudulent intent. Stone v. Commissioner,56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner,53 T.C. 96, 105-106 (1969). Respondent must prove fraud in each of the years involved. Drieborg v. Commissioner,225 F.2d 216, 220 (6th Cir. 1955). A pattern of consistent underreporting of income for a number of years, especially when accompanied by other circumstances showing an intent to conceal, justifies the inference of fraud as to each of the years. Holland v. United States,348 U.S. 121, 129 (1954); Estate of Mazzoni v. Commissioner,451 F.2d 197 (3d Cir. 1971); Agnellino v. Commissioner,302 F.2d 797 (3d Cir. 1962); Otsuki v. Commissioner, supra.
Petitioners admit in this case that there was unreported corporate and individual income for each of the years in issue and that there was an underpayment of both corporate and individual income tax for each of the years in issue. [2] As to 1978 and 1979, petitioner admitted in the Plea Agreement that he knowingly filed false individual income tax returns. *534 Petitioner now contends that he maintained his expense records and the Special Account in the same manner after commencing business through the corporation as he did when he was employed by Worthington; that he did not realize that the reimbursement checks deposited in the Special Account constituted taxable income; that the Special Account was not kept a "secret" from the corporate tax return preparer because the accountants' fees and certain taxes were paid by checks written on the Special Account; that a careful accountant would have inquired for records of exact travel and entertainment expenditures instead of accepting the total from the ledgers that included checks written to petitioner for even amounts; and that he cooperated fully with the Internal Revenue Service during the audit of the corporate returns. Separate banks accounts and other means of concealing assets are frequently cited as evidence of fraud for criminal or civil purposes. We are unpersuaded by petitioner's suggestion that the bank account was not secret and the practice was not fraudulent because it could have been easily discovered by the accountants. Failure to take additional steps that would have made *535 discovery less likely does not negate fraudulent intent. The United States Court of Appeals for the Seventh Circuit, to which our decision in this case is appealable, recently stated: It cannot be expected that all tax payment evaders approach their problem in the same way. They have demonstrated a certain misguided freedom to use their own devices as they deem best to suit their own circumstances. Although the defendants in the cases we have reviewed used some different methods of attempting to conceal their assets * * *, the cases are not distinguishable on that ground. * * * [United States v. Conley,826 F.2d 551,     87-2 USTC par. 9469 at 89,340 (7th Cir. 1987).] We do not believe petitioner's testimony at trial that he did not understand that reimbursement of expenses received from his Canadian customers was taxable income. That testimony is contradicted by the admissions in the Plea Agreement that he signed his 1978 and 1979 individual income tax returns knowing they were false because he did not include the unreported reimbursement checks. The conviction pursuant to his plea related only to 2 years and two returns and, even for those years, *536 does not collaterally estop either petitioner or the corporation from disputing the additions to tax fraud. Wright v. Commissioner,84 T.C. 636 (1985). Those prior statements as to his state of mind and intent, however, impeach his present assertion that he lacked knowledge of the taxability of the funds. Petitioner's argument that he cooperated with the examining agent during the audit is contradicted by evidence that he fabricated documents to present to the auditing agent. He presented to the agent records purportedly reflecting travel on behalf of particular clients; he now admits that those documents were typed at the time of the audit. The typewritten records bore his signature and handwritten dates appearing to reflect the date of execution. Other records, however, showed that petitioner was travelling away from home on dates handwritten on the typed expense reports. Although petitioner assets that he was merely trying to be "helpful" in making up records for the examining agent, the probable effect of the documents was to mislead the examining agent. Based on the total record, respondent has satisfied his burden of proof by clear and convincing evidence *537 that the underreporting of income and underpayment of tax on the corporate and individual income tax returns for each of the years in issue was due to fraud. The additions to tax are therefore sustained. Decisions will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code as amended and in effect during the years in issue, except as otherwise noted. ↩
*. The liability of Amy S. Layton is limited to the amounts of the deficiencies. ↩
2. At trial, petitioners' counsel stated: Mr. Layton admits that the taxes on his corporate return JLI and his personal returns were understated for the years in question. As the result of the failure to include in corporate income the expense reimbursements mentioned * * * ↩