JOSE P. IGLESIAS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 12659–78.     Filed June 25, 1981.

Jose P. Iglesias, pro se.
*Adeline P. Malone*, for the respondent.

WILBUR, *Judge*: Respondent determined a deficiency in petitioner's Federal income tax for the taxable year 1975 in the amount of $3,328.60, and an addition to the tax pursuant to section 6651(a)[1] in the amount of $832.15. Due to concessions by the parties, the remaining issues for our decision are:

---

[1]All section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable year at issue, unless otherwise indicated.

(1) Whether $3,600 of the amount received by petitioner as a second-year resident during the taxable year 1975 is excludable from gross income as a fellowship under section 117;

(2) Whether expenses petitioner incurred in undergoing psychoanalysis qualify as ordinary and necessary business expenses deductible under section 162.

## FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts and the attached exhibits are incorporated herein by this reference.[2]

At the time of the filing of the petition in this case, petitioner resided in Brooklyn, N.Y. During 1975, petitioner was a licensed physician and a second-year resident in the Department of Psychiatry at the State University Hospital-Kings County Hospital Medical Center (the hospital). The hospital operated the Downstate Medical Center and the Kings County Hospital Center, both of which have as their primary purpose the care of patients.

As a second-year resident, petitioner worked a 40-hour week. Approximately one-third of this time was spent attending classes. The rest of the time was spent engaging in various activities involving patient care and services for the hospital. Petitioner spent some part of every week performing the following services: working in the psychiatric emergency room; working in the psychiatric wards; treating patients admitted to the psychotherapy programs; performing general medical care for the psychiatric patients; and preparing tentative treatment plans and patient reports. Petitioner was assigned patients with whom he had continuing contact, and frequently petitioner was the only physician meeting with patients in the various programs. In addition to his 40-hour work week, petitioner was on call at the hospital 12 hours a week. Petitioner worked nights and weekends at the hospital. He also performed services in the alcoholic unit of the hospital on an irregular basis.

As a licensed physician in the second year of the residency program, petitioner was entitled to receive group health insur-

---

[2] In addition to the joint exhibits attached to the stipulation of facts, petitioner attached certain marked documents to his trial memorandum. However, these documents were never offered into evidence and therefore we do not consider them for the purposes of this opinion.

ance, paid vacations, free meals while on call, sick leave, and increased pay for experience. During the taxable year 1975, petitioner received $23,474 from the New York City Health & Hospitals Corp. Petitioner also received $3,351 from New York State. Petitioner excluded $3,600 of the amounts received from the New York City Health & Hospitals Corp. and New York State as a fellowship on his 1975 return.

In addition to his work as a licensed physician in the residency program, petitioner provided services as a psychiatric consultant to two institutions unrelated to the hospital, the Brooklyn-Cumberland Medical Center and the Brooklyn Counseling Community Center. For these services, petitioner received compensation during 1975 in the amount of $2,576 from the Brooklyn-Cumberland Medical Center and $140 from the Brooklyn Counseling Community Center.

During 1975, petitioner began psychoanalysis with Dr. William Kapuler, a member of the Downstate Psychoanalytic Institute (the institute). Petitioner incurred expenses in the amount of $2,160 for the psychoanalysis, which he deducted as a business expense. Approximately 98 percent of the second-year residents in the department of psychiatry underwent psychoanalysis during the year 1975. However, psychoanalysis was not a requirement of the department of psychiatry for completion of the residency, nor was it a requirement to become a board-certified psychiatrist. The psychoanalytic program at the institute was a separate program from the psychiatric residency program at the hospital. The institute chose its own candidates for psychoanalysis, and those residents who were not selected for the program or who did not apply to the program were not required to have psychoanalysis at all. Psychoanalysis was not formally recommended for residents in the psychiatric program, although the residency program was analytically oriented. Petitioner was allowed time off from his regular duties by the department of psychiatry in order to attend the psychoanalysis sessions.

## OPINION

During 1975, petitioner was a licensed physician who was in his second year in the residency program of the Department of Psychiatry of State University Hospital-Kings County Hospital Medical Center. Petitioner excluded from gross income $3,600 of

the amount he received during 1975 from the New York City Health & Hospitals Corp. and the State of New York as a fellowship grant under section 117. Respondent contends that the total amount paid during 1975 to petitioner represents payment for services rendered by petitioner for the hospital, and thus is not excludable under section 117. We agree with respondent.

This case is not factually distinguishable from many other cases involving interns and residents who perform valuable services for hospitals while at the same time receiving training in a specialty. In all of those cases, we have held that the total amount received constitutes compensation for services, and not excludable fellowship grants. See, e.g., *Adams v. Commissioner*, 71 T.C. 477 (1978); *Rosenthal v. Commissioner*, 63 T.C. 454 (1975); *Dietz v. Commissioner*, 62 T.C. 578 (1974); *Fisher v. Commissioner*, 56 T.C. 1201 (1971). We see no need to further elaborate on the rationale of those holdings. Indeed, the only case that petitioner cites, which allowed a resident to exclude an amount as a fellowship grant on the theory that it was a separable portion from that which constituted compensation for services, does not support petitioner's position. See *Burstein v. United States*, 622 F.2d 529 (Ct. Cl. 1980), not adopting 43 AFTR 2d 79–1132, 79–1 USTC par. 9354 (Ct. Cl. Trial Judge's Op., May 2, 1979). Therefore, the total amounts received by petitioner during the year 1975 represent compensation for services, none of which is excludable as a fellowship under section 117.

## *Educational Expenses*

During 1975, petitioner underwent psychoanalysis and deducted the incurred expenses as ordinary and necessary business expenses under section 162. Respondent contends that petitioner's expenses are not deductible because the psychoanalysis was undertaken prior to the time petitioner became qualified as a fully trained psychiatrist and thus was not undertaken to maintain or improve the skills required of petitioner in his trade or business. Alternatively, respondent argues that the psychoanalysis was part of an educational program which led to qualifying petitioner for a new trade or business, namely the medical specialty of psychiatry. We agree with petitioner that his expenses in undergoing psychoanalysis are deductible under section 162.

Educational expenditures incurred by an individual are deductible as ordinary and necessary business expenses under section 162 if the education maintains or improves skills required by the individual in his employment. Sec. 1.162–5(a)(1), Income Tax Regs. However, a deduction for educational expenses will not be allowed if the educational expenses are part of a program of study being pursued by the individual which will lead to qualifying him for a new trade or business. Sec. 1.162–5(b)(3), Income Tax Regs.

Respondent first argues that because petitioner was not yet a board-certified psychiatrist, psychoanalysis did not maintain or improve skills required of him in his employment.[3] We reject this contention because it misconstrues petitioner's employment during 1975 and the skills required of him in his employment.

There can be no doubt that petitioner was employed during 1975 as a licensed medical doctor. Indeed, as respondent cogently argues in the first part of his brief, the payments petitioner received during 1975 were compensation for valuable services he rendered as a physician in treating patients at the hospital. Moreover, most of petitioner's duties involved treating psychiatric patients for psychiatric disorders. He treated psychiatric patients admitted to psychotherapy programs in unsupervised counseling sessions and worked with outpatients in unsupervised settings. In addition to his work at the hospital, petitioner was employed by two unrelated medical centers as a psychiatric consultant performing purely psychiatric duties.

Given the nature of petitioner's duties, we think it clear that the psychoanalysis maintained or improved the skills required by him in his employment as a licensed physician treating psychiatric patients. Dr. Dickes, the chairman of the department of psychiatry testified that undergoing psychoanalysis improved the skills of a physician treating psychiatric patients by enhancing self-awareness and enabling one to recognize "blocks" about certain material. In *Voigt v. Commissioner*, 74 T.C. 82 (1980), we held that the cost of psychoanalysis was deductible as a business expense for a clinical social worker based on the rationale that a

---

[3]Under respondent's regulations, expenditures for psychoanalytic training and study for a person engaged in the private practice of psychiatry are deductible business expenses. Sec. 1.162–5(b)(3)(ii), example (4), Income Tax Regs.

deeper self-understanding contributed directly to an improvement in a therapist's diagnostic skills.[4] Respondent's denial of the utility of petitioner's psychoanalysis overlooks the fact that petitioner was employed during 1975 as a licensed medical doctor treating psychiatric patients. It is anomalous in the extreme to tax petitioner on the income earned from treating psychiatric patients and then deny him a deduction for psychoanalysis that was directly and proximately related to petitioner's duties. On the record before us, it is unequivocally clear that the psychoanalysis served to maintain and improve the skills required by petitioner in his employment.

Respondent next argues that the cost of psychoanalysis is not deductible because it was part of a program of study which would lead to qualifying petitioner for a new trade or business, namely the specialty of psychiatry. See sec. 1.162–5(b)(3), Income Tax Regs. But even assuming without deciding that psychiatry is a different trade or business from general medicine, we reject respondent's argument because we find that the psychoanalysis was not a part of the hospital program which led to petitioner's becoming a board-certified psychiatrist.

Petitioner was a licensed medical doctor in the psychiatric residency program. Successful completion of the program enabled petitioner to take examinations to become a board-certified psychiatrist. The residency training program required many hours of classroom and clinical work. What it did not require was undergoing psychoanalysis.

Dr. Dickes, the chairman of the department of psychiatry during 1975, and the person responsible for the residents and other staff of the hospital, testified that psychoanalysis was not

---

[4]In *Watson v. Commissioner*, 31 T.C. 1014 (1959), we held the costs of psychoanalysis to be a deductible business expense for a physician who practiced internal medicine. The regulations pertaining to the deductibility of educational expenses were changed in many respects in 1968 in an effort to provide objective criteria for deductibility. See sec. 1.162–5, Income Tax Regs.; *Weiler v. Commissioner*, 54 T.C. 398, 401 (1970). In allowing the deduction for psychoanalysis, this Court in *Watson* focused squarely on the language of earlier regulations allowing a deduction for "education * * * undertaken primarily for the purpose of maintaining or improving skills required by the taxpayer in his * * * trade or business." The present regulations allow a deduction for education that "maintains or improves skills required by the individual in his employment or other trade or business." Sec. 1.162–5(a)(1), Income Tax Regs. While great care must be devoted to the different consequences resulting from the application of an objective standard in the new regulations in lieu of the subjective standard of the old regulations, a careful reading of the *Watson* opinion in light of the particular facts there involved makes it clear that *Watson* is at least supportive of, if not direct authority for, the conclusions we reach.

a requirement nor was it a part of the psychiatric residency program. The psychoanalytic institute where petitioner received his psychoanalysis was a separate and distinct entity from the hospital which housed the psychiatric residency program. The psychoanalytic institute chose its candidates for psychoanalysis, and those residents in the psychiatric residency program who were not selected for psychoanalysis or who chose not to apply were not required to have any analysis at all.

Respondent argues that petitioner underwent psychoanalysis in order to be a better psychiatrist, and thus it constituted an "optional" part of his training for a new trade or business. However, the regulations provide an objective standard for determining when an educational expense is deductible. *Weiler v. Commissioner*, 54 T.C. 398, 401 (1970). Psychoanalysis was not a part of the psychiatric residency program nor was it a requirement of becoming a board-certified psychiatrist.[5] Psychoanalysis did maintain and improve the skills required by petitioner in his employment during 1975 as a licensed medical doctor who treated psychiatric patients. That the psychoanalysis may also improve petitioner's skills in the future as a board-certified psychiatrist (which respondent contends is a different trade or business) does not defeat deductibility where the psychoanalysis was proximately related to and served to improve skills required in petitioner's employment during 1975 and was not part of a program of study which would lead to qualification in a new trade or business.

To reflect the foregoing,

*Decision will be entered under Rule 155.*

---

[5]Respondent's brief includes the following statement:

"Petitioner testified * * * that the psychoanalysis which he undertook in 1975, 'was not a requirement by the Department of Psychiatry, not for completion of the residency nor is it a requirement to become a physician, nor is [it] a requirement to be board certified or legal, et cetera.'"

Respondent, in quoting verbatim this testimony (which was corroborated repeatedly by Dr. Dickes), accepts and relies on it, claiming that petitioner thereby "definitively established that his personal psychoanalysis was not undertaken in order to meet the express requirements of his employer, the hospital." We agree with respondent that this testimony must be accepted for establishing the truth of what it asserts. Additionally, we note that petitioner was engaged in a hospital based residency program, where the learning and treatment elements are a unified process, an indivisible whole. If the hospital didn't require it, it wasn't a requirement of the residency program.