KENNETH PORTER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Porter v. Commissioner
Docket Nos. 19074-83, 36261-84.
United States Tax Court
T.C. Memo 1986-70; 1986 Tax Ct. Memo LEXIS 539; 51 T.C.M. (CCH) 477; T.C.M. (RIA) 86070; February 13, 1986. *539 During 1979 and 1980, P, a practicing psychiatrist, underwent psychotherapy. P deducted the costs he incurred in undergoing psychotherapy as ordinary and necessary business expenses under section 162(a), I.R.C. 1954. Held, because the psychotherapy improved P's skills as a psychiatrist, he is entitled to deduct the expenses he incurred in undergoing psychotherapy as an education expense under section 162(a), I.R.C. 1954. Iglesias v. Commissioner,76 T.C. 1060 (1981), and Voigt v. Commissioner,74 T.C. 82 (1980), applied. Held further, the amount of deductible telephone expenses under section 162(a), I.R.C. 1954, determined. Held further, P is not liable for additions to tax for fraud under section 6653(b), I.R.C. 1954. Held further, P is not liable for additions to tax under section 6653(a), I.R.C. 1954, for negligence or intentional disregard of rules and regulations. William T. Holloran and Barbara T. Kaplan, for the petitioner. Frances Ferrito Regan, for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: Respondent determined the following deficiencies in and additions to petitioner's Federal income taxes: Additions to Tax
Year
Deficiency
Sec. 6653(b) [1]
Sec. 6653(a) (Alternatively)
1979
$15,929
$7,965
1980
20,278
10,139
$1,014
*541 The issues for decision are: (1) whether petitioner, a psychiatrist, is entitled to deduct certain expenses he incurred in undergoing psychotherapy during the years in issue as ordinary and necessary business expenses under section 162(a); (2) alternatively, whether petitioner is entitled to deduct such amount as medical expenses under section 213; (3) whether petitioner is entitled to deduct certain telephone expenses he incurred during the years in issue as ordinary and necessary business expenses under section 162(a); and (4) whether petitioner is liable for additions to tax under section 6653(b) (fraud) or, alternatively, section 6653(a) (negligence or intentional disregard of rules and regulations). FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner Kenneth Porter (petitioner) resided in New York, New York, at the time he filed the petitions *542 herein. Petitioner graduated from the Albert Einstein College of Medicine in June, 1969, and subsequently received him medical license from the State of New York in 1970. In July, 1970, petitioner began a residency in psychiatry at the Albert Einstein College of Medicine. Upon completion of his residency in July, 1973, petitioner began practicing as a psychiatrist. In April, 1976, petitioner was admitted to the American Board of Psychiatry. Petitioner was not required to undergo psychotherapy to become a psychiatrist. It was well accepted, however, that a psychiatrist who underwent psychotherapy would improve his psychotherapeutic techniques by (1) learning more about his own personality disorders so that he could separate his problems from his patient's problems and (2) modeling his own psychotherapeutic techniques after those practiced by more experienced psychiatrists. The directors of most psychiatric residency programs therefore encouraged psychiatric residents to undergo personal psychotherapy as part of their psychiatric training and to continue such therapy after the completion of their residency. In 1965, petitioner began psychotherapy with Dr. Benjamin Rudner, a psychiatrist, *543 for the treatment of certain personality disorders. Petitioner underwent psychotherapy with Dr. Rudner for approximately six months. After terminating his treatments with Dr. Rudner, petitioner began psychotherapy with Dr. Theodore Jacobs, another psychiatrist. Petitioner underwent psychotherapy with Dr. Jacobs for approximately nine months. In January, 1967, while a second year medical student, petitioner began psychotherapy with Dr. Cornelius Beukenkamp (Dr. Beukenkamp), a board certified psychiatrist. Petitioner decided to undergo psychotherapy with Dr. Beukenkamp after investigating his background and learning of his excellent reputation as a psychiatrist. During the course of his investigation, petitioner discovered that Dr. Beukenkamp was (1) a board certified psychiatrist who had also received extensive training in psychoanalysis at New York Medical College; (2) the author of a book and numerous articles dealing with a wide range of psychiatric topics; (3) a member of several psychiatric associations, including the Association for Group Psychoanalysis, of which he served as president from 1957 through 1958; and (4) a participant in the 1936 Olympic Games. [2]
*544 Petitioner underwent group psychotherapy with Dr. Beukenkamp from January, 1967, through late 1970 or early 1971, when Dr. Beukenkamp left New York and settled in Costa Rica. Dr. Beukenkamp moved to Costa Rica after he developed Raynaud's disease, a disease which affects the lawer extremities in cold weather. After his departure, Dr. Beukenkamp recommended to petitioner that he continue his psychotherapeutic treatment with Dr. Sidney Cohen, a psychologist in New York City. Petitioner underwent personal psychotherapy with Dr. Cohen until 1977. In the fall of 1971, petitioner again commenced group psychotherapy with Dr. Beukenkamp. Dr. Beukenkamp conducted these sessions in person, by telephone and by audio cassette. In 1972, petitioner also began individual psychotherapy with Dr. Beukenkamp which he conducted in person, by telephone and by audio cassette. During the individual and group psychotherapy sessions, petitioner received treatment for certain personality disorders which interfered with his ability to practice as a psychiatrist. During the individual sessions, petitioner also discussed the treatment of his own patients with Dr. Beukenkamp. Petitioner patterned his psychotherapy *545 techniques after those practiced by Dr. Beukenkamp. Petitioner underwent psychotherapy with Dr. Beukenkamp through February, 1982. During 1979 and 1980, petitioner's group psychotherapy sessions were conducted as follows: During April, June and September of both years, Dr. Beukenkamp traveled from Costa Rica to New York to conduct the group sessions in person. These sessions were held at the Manhattan apartment of John Bing (John), a member of the group. Dr. Beukenkamp would schedule the sessions prior to his visits to New York. Dr. Beukenkamp requested that petitioner pay for these sessions in advance. During part of 1979, when Dr. Beukenkamp was not present in New York, he would conduct the group sessions by audio cassette. The group would meet at John's apartment to discuss their personal problems. These discussions were recorded on an audio cassette and sent to Dr. Beukenkamp in Costa Rica. After receiving and listening to the recorded session, Dr. Beukenkamp would record his psychiatric responses to the session on another cassette which he would then mail to the group in New York. The group would subsequently play Dr. Beukenkamp's tape at the beginning of the next *546 group session. Sometime in 1979, rather than recording his psychiatric observations on tape, Dr. Beukenkamp began to telephone the group at the beginning of each session to discuss the prior week's session. A speakerphone located in John's apartment enabled Dr. Beukenkamp and the group members to communicate with each other. During the years in issue, petitioner also participated in individual psychotherapy sessions with Dr. Beukenkamp. During Dr. Beukenkamp's visits to New York, the sessions were held at John's apartment. Dr. Beukenkamp scheduled these sessions prior to his arrival in New York and requested that petitioner pay for these sessions in advance. From January, 1979, through September, 1979, when Dr. Beukenkamp was not present in New York, petitioner would record a weekly tape on which he would discuss his personal problems.Petitioner would then send this tape to Dr. Beukenkamp in Costa Rica. After receiving and listening to the tape, Dr. Beukenkamp would record his psychiatric responses on another cassette which he would then mail to petitioner in New York. Petitioner would subsequently listen to the tape. In October, 1979, Dr. Beukenkamp decided to conduct *547 petitioner's individual psychotherapy sessions by telephone. Petitioner therefore discontinued his use of audio cassettes and began making regular telephone calls to Dr. Beukenkamp in Costa Rica. During the course of these telephone calls, petitioner would discuss personal problems he was experiencing and Dr. Beukenkamp would provide psychiatric feedback. During 1980, petitioner made the following telephone calls to Dr. Beukenkamp in Costa Rica: [3]
Date
Time
Length (min.)
Charge
1/2/80
8:01 p.m.
19
$ 26.60
1/9/80
8:01 p.m.
20
28.00
1/16/80
8:01 p.m.
27
37.80
1/17/80
10:05 p.m.
15
21.00
1/18/85
8:08 p.m.
13
18.20
1/23/80
8:00 p.m.
22
30.80
1/31/80
7:30 p.m.
25
35.00
2/7/80
7:30 p.m.
28
39.20
2/13/80
8:00 p.m.
30
42.00
2/21/80
7:30 p.m.
30
42.00
2/28/80
7:30 p.m.
25
35.00
3/2/80
8:29 p.m.
12
16.80
3/6/80
7:30 p.m.
27
37.80
3/13/80
7:31 p.m.
28
39.20
3/20/80
7:30 p.m.
25
35.00
3/24/80
7:35 p.m.
23
32.20
4/24/80
7:31 p.m.
28
39.20
5/1/80
8:30 p.m.
29
40.60
5/8/80
8:30 p.m.
25
35.00
5/15/80
8:30 p.m.
30
42.00
5/22/80
8:30 p.m.
29
40.60
5/29/80
8:30 p.m.
30
42.00
6/5/80
8:30 p.m.
26
36.40
6/12/80
8:30 p.m.
29
42.05
6/16/80
9:04 p.m.
26
38.60
7/17/80
8:30 p.m.
29
42.05
7/24/80
8:30 p.m.
29
42.05
7/31/80
8:30 p.m.
30
43.50
8/7/80
8:30 p.m.
29
42.05
8/14/80
8:30 p.m.
26
37.70
8/21/80
8:30 p.m.
28
40.60
8/28/80
8:29 p.m.
30
43.50
9/1/80
10:00 p.m.
30
43.50
9/4/80
8:29 p.m.
30
43.50
10/16/80
8:29 p.m.
30
43.50
10/23/80
8:29 p.m.
30
43.50
10/30/80
7:29 p.m.
30
43.50
11/6/80
7:29 p.m.
30
43.50
12/18/80
7:30 p.m.
30
43.50
12/22/80
7:30 p.m.
29
42.05
12/29/80
7:30 p.m.
29
42.05
TOTAL
$1,553.10
*548 During 1979, Dr. Beukenkamp charged a fee of $100 and $50 for individual and group psychotherapy, respectively. During 1980, his fee for individual and group psychotherapy was $125 and $75, respectively. Approximately once a month, John would deliver to petitioner a small slip of paper indicating the amount he owed to Dr. Beukenkamp for individual and group psychotherapy sessions. During 1979 and 1980, petitioner issued checks payable to the order of Cornelius Beukenkamp totalling $30,349.83 and $37,100, respectively. Although Dr. Beukenkamp sometimes collected these checks in person during the months he was present in New York, John generally collected these checks on behalf of Dr. Beukenkamp. Upon receipt of a check, John would endorse it with a rubber stamp as follows: Cornelius Beukenkamp, M.D. John W. Bing He would then deposit petitioner's check, together with the checks he had collected from the other group members, in his personal bank *549 account with Chase Manhattan Bank. After depositing the checks, John would draw his own check to the order of the Chase Manhattan Bank for the total amount collected and purchase a cashier's check. John would take the cashier's check to the Bank of Boston. The Bank of Boston would then transmit funds in the amount of the cashier's check to a bank account maintained by Dr. Beukenkamp in Luxembourg. During 1979 and 1980, petitioner maintained a diary of his daily appointments, including his individual and group psychotherapy sessions with Dr. Beukenkamp. The diaries list the following scheduled sessions: 1979
Individual
Group
March 30-April 25
18
19
June 1-June 27
19
23
Sept. 7-Dec. 27
33
48
TOTAL
70
90
1980
Individual
Group
Jan. 2-Jan. 31
6
17
Feb. 4-Feb. 28
4
11
March 3-March 31
6
15
April 1-April 30
15
22
May 1-May 29
5
13
June 2-June 30
11
18
July 1-July 31
12
20
Aug. 4-Aug. 28
4
5
Sept. 1-Sept. 30
17
22
Oct. 1-Oct. 30
11
21
Nov. 3-Nov. 27
4
11
Dec. 1-Dec. 30
5
14
TOTAL
100
189
During 1979 and 1980, petitioner maintained a private psychiatric practice and served as Director *550 of Group and Family Therapy at St. Luke's Hospital. In his private practice, petitioner spent approximately 40 to 50 hours per week conducting individual and group psychotherapy. At St. Luke's Hospital, he spent an additional 30 hours per week conducting psychotherapy and teaching psychotherapy techniques to psychiatric residents and psychology students. On Schedules C attached to his 1979 and 1980 Federal income tax returns, petitioner claimed psychotherapy expenses of $29,224 and $38,120, respectively, as professional education and development expenses. He also claimed telephone expenses in the amounts of $1,643 and $2,429 for 1979 and 1980, respectively. In the notices of deficiency, respondent disallowed these deductions in full. The notices also contained additions to tax under section 6653(b) (fraud) or, alternatively, section 6653(a) (negligence or intentional disregard of rules and regulations). OPINION Issue 1. Psychotherapy Expenses
The first issue for decision is whether petitioner is entitled to deduct certain expenses he incurred in undergoing psychotherapy during the years in issue as ordinary and necessary business expenses under section 162(a).Under *551 section 162 education expenses are deductible as ordinary and necessary business expenses when the education maintains or improves skills required by an individual in his trade or business. Section 1.162-5(a)(1), Income Tax Regs. Such expenses are not deductible, however, if the education is undertaken either to meet the minimum requirements for that trade or business or to qualify for a new trade or business. Section 1.162-5(b)(2) and (3), Income Tax Regs.
Petitioner contends that during 1979 and 1980 he incurred expenses in the amounts of $29,224 and $38,120, respectively, in undergoing psychotherapy with Dr. Beukenkamp. He further contends that because the psychotherapy improved his skills as a psychiatrist, such expenses are deductible as education expenses under section 162(a). Respondent does not challenge petitioner's claimed deductions on the grounds that the psychotherapy qualified petitioner for a new profession or satisfied minimum requirements of his present profession. Rather, respondent argues that petitioner has failed to establish that the above amounts were incurred and paid for psychotherapy or that such amounts were received by Dr. Beukenkamp. Respondent *552 alternatively contends that petitioner has not established that he incurred expenses in excess of $13,000 and $26,875 in undergoing psychotherapy during 1979 and 1980, respectively. [4] Respondent further argues that even if petitioner has established that he paid some amount to Dr. Beukenkamp for so-called "psychotherapy," Dr. Beukenkamp's methods were not thereapeutic and therefore did not improve his skills as a psychiatrist. We will first consider the amount of expenses, if any, petitioner incurred in undergoing psychotherapy with Dr. Beukenkamp during 1979 and 1980. To support his claimed deductions, petitioner presented cancelled checks payable to the order of Cornelius Beukenkamp totalling $30,349.83 and $37,100 for 1979 and 1980, respectively. On the record before us, we are satisfied that Dr. Beukenkamp actually received these amounts. We recognize that Dr. *553 Beukenkamp's method of billing for his services and his arrangements for receiving payments are sufficiently unconventional so as to raise questions as to Dr. Beukenkamp's motives. These arrangements are described in our findings of fact and need not be repeated here. Dr. Beukenkamp did not testify at trial. Nevertheless, it is not Dr. Beukenkamp's tax affairs which are under scrutiny in this case, but petitioner's, and we have no basis upon which to hold petitioner responsible for Dr. Beukenkamp's arrangements or reason to do so. Petitioner, however, has failed to establish that Dr. Beukenkamp received payments in excess of $13,000 and $27,175 during 1979 and 1980, respectively, for his performance of psychotherapy. At trial, petitioner presented diaries he maintained during 1979 and 1980 which contain a list of his daily appointments for those years. Petitioner's diary for 1979 establishes that he participated in 70 individual psychotherapy sessions and 90 group psychotherapy sessions with Dr. Beukenkamp during that year. Similarly, petitioner's diary for 1980 establishes that he participated in 100 private psychotherapy sessions and 189 group psychotherapy sessions with Dr. *554 Beukenkamp during that year. Petitioner also presented 15 audio cassettes containing psychiatric comments recorded by Dr. Beukenkamp during 1979. These tapes represent private psychotherapy sessions which petitioner participated in during 1979 but which do not appear in his 1979 diary of appointments. The record also contains copies of petitioner's itemized telephone bills for 1980 which show that he engaged in four private psychotherapy sessions by telephone which do not appear in his 1980 diary of appointments. Thus, based on the records presented at trial, we find that petitioner has established that he participated in 85 individual psychotherapy sessions and 90 group psychotherapy sessions during 1979. We further find that petitioner has established that he participated in 104 individual psychotherapy sessions and 189 group psychotherapy sessions during 1980. Petitioner testified at trial that Dr. Beukenkamp charged a fee of $50 per group session and $100 per private session during 1979. Petitioner further testified that Dr. Beukenkamp charged a fee of $75 per group session and $125 per private session during 1980. We found petitioner's testimony to be credible and unimpeached. *555 Consequently, we find that petitioner incurred and paid the following expenses in undergoing psychotherapy with Dr. Beukenkamp during 1979 and 1980: 1979
85 individual sessions at $100 per session
$ 8,500
90 group sessions at $50 per session
4,500
TOTAL
$13,000
1980
104 individual sessions at $125 per session
13,000
189 group sessions at $75 per session
14,175
TOTAL
$27,175
Having determined the amount of expenses petitioner incurred in undergoing psychotherapy with Dr. Beukenkamp during the years in issue, we must next determine the amount of the expenses, if any, which constitutes an ordinary and necessary business expense within the meaning of section 162(a). Petitioner maintains that because the psychotherapy improved his skills as a psychiatrist, all of the expenses he incurred in undergoing psychotherapy are deductible as education expenses under section 162(a). Respondent disagrees, primarily arguing that petitioner's sessions with Dr. Beukenkamp were not therapeutic and therefore did not improve his skills as a psychiatrist. To support his position, petitioner relies on Voigt v. Commissioner,74 T.C. 82 (1980), and Iglesias v. Commissioner,76 T.C. 1060 (1981). *556 In Voigt, we held that a clinical social worker who practiced psychotherapy was entitled to deduct the costs she incurred in undergoing psychoanalysis because the psychoanalysis improved her skills as a social worker. In so holding, we found an integral relationship between the education involved and her employment, stating that: A deeper self-understanding * * * contributes directly to an improvement in a therapist's diagnostic skills; a clinical social worker must be able to separate her personality problems from those of her patients so that she can properly diagnose and treat her patients' problems. [74 T.C. at 87.] Similarly, in Iglesias v. Commissioner,76 T.C. 1060 (1981), we held that a second year resident in a residency program in psychiatry was entitled to deduct the costs he incurred in undergoing psychoanalysis under section 162(a). In Iglesias, we found that "psychoanalysis maintained or improved the skills required by [taxpayer] in his employment as a licensed physician treating psychiatric patients." 76 T.C. at 1064. In the instant case, the record clearly establishes that psychotherapy improved petitioner's *557 ability to practice as a psychiatrist. We therefore think that the above cases are dispositive of the issue presented herein. During the years in issue, petitioner was a practicing psychiatrist who conducted both group and individual psychotherapy sessions. During this same period of time, petitioner was undergoing psychotherapy with Dr. Beukenkamp for the treatment of a number of personality disorders which interfered with his ability to practice as a psychiatrist. Petitioner testified at trial that as a result of his psychotherapy with Dr. Beukenkamp he had reduced the severity of his personality disorders and, therefore, had improved his skills as a psychotherapist. He further testified that he modeled his own therapy techniques after those used by Dr. Beukenkamp and often discussed the treatment of his own patients with Dr. Beukenkamp during his sessions with Dr. Beukenkamp. Moreover, petitioner's expert witness, Dr. Harold Schwartz, a psychiatrist certified by the American Board of Psychiatry and Neurology, agreed that petitioner's psychotherapy treatments had improved his skills as a psychiatrist. Dr. Schwartz based his opinion on discussions he had with petitioner concerning *558 petitioner's personality disorders and Dr. Beukenkamp's treatment of those personality disorders. Dr. Schwartz further testified that psychotherapy is important to the development and training of all psychiatrists because it helps them to clear away psychological blind spots that obscure their ability to see and understand their patients' problems. Respondent nevertheless contends that the facts of this case are distinguishable from the facts in Voigt and Iglesias in that Dr. Beukenkamp's psychotherapy methods were not therapeutic. To support his position respondent presented the testimony of Dr. Stanley L. Portnow, a board certified psychiatrist and psychoanalyst. At trial, Dr. Portnow challenged the therapeutic value of Dr. Beukenkamp's psychotherapy methods on the ground that most of the therapy sessions in issue were conducted by telephone and by audio cassette. Dr. Portnow testified that in the absence of an emergency he was not aware of any school of thought that allows a psychiatrist to conduct psychotherapy by telephone. He also testified that he was not aware of any situation in which the use of an audio cassette was acceptable. Moreover, after listening to several *559 tapes containing Dr. Beukenkamp's recorded comments, Dr. Portnow concluded that petitioner had not, in fact, undergone psychotherapy with Dr. Beukenkamp. Although we recognize that Dr. Portnow is sufficiently qualified to testify as an expert in psychiatry, the record contains substantial evidence that Dr. Beukenkamp's psychotherapy methods were indeed therapeutic. Dr. Schwartz, petitioner's expert witness, testified that the use of the telephone in psychotherapy, although not common, is an acceptable practice when the therapist or patient moves to a new location. Dr. Schwartz referred at trial to several published materials which support his conclusion. Moreover, after listening to Dr. Beukenkamp's taped psychiatric comments and talking with petitioner, Dr. Schwartz concluded that the private and group psychotherapy sessions which were conducted by tape had the key elements of psychotherapy; i.e., systematic identification and discussion of petitioner's personality disorders. Further, the record clearly establishes that petitioner, who is also a practicing psychiatrist, found Dr. Beukenkamp's psychotherapy methods effective in the treatment of his personality disorders. At trial, *560 petitioner described the effectiveness of Dr. Beukenkamp's therapy as follows: The treatment with Dr. Beukenkamp was enormously helpful to me, it was helping me get over all my personal problems, it was teaching me a tremendous amount about how to conduct psychotherapy myself. I was very satisfied with the treatment. I couldn't imagine finding anyone who would be as helpful for me personally or professionally. Petitioner's willingness to undergo psychotherapy with Dr. Beukenkamp for approximately 11 years supports this testimony. We do not think that petitioner would have continued his relationship with Dr. Beukenkamp for this period of time if he did not find Dr. Beukenkamp's methods to be effective. Moreover, petitioner was willing to pay more than $40,000 to Dr. Beukenkamp during 1979 and 1980 for his psychiatric services. By 1979, petitioner had undergone psychotherapy with Dr. Beukenkamp for at least eight years and, therefore, was well aware of Dr. Beukenkamp's psychotherapy methods and the effectiveness of those methods. Thus, petitioner's willingness to pay these amounts to Dr. Beukenkamp for his psychiatric services is additional evidence of the effectiveness of *561 Dr. Beukenkamp's methods. Additionally, some of the members of petitioner's therapy group testified at trial that they had incurred expenses in amounts similar to those incurred by petitioner in undergoing psychotherapy with Dr. Beukenkamp. We therefore assume that they also found Dr. Beukenkamp's psychotherapy methods to be effective. Thus, in the absence of additional evidence challenging the effectiveness of Dr. Beukenkamp's psychotherapy methods, we find that Dr. Portnow's testimony is insufficient to overcome the substantial evidence in the record that Dr. Beukenkamp's methods were indeed therapeutic. We are also unpersuaded by respondent's attempt to distinguish Voigt and Iglesias on the ground that the taxpayers in those cases underwent psychoanalysis while, here, petitioner underwent psychotherapy. At trial, Dr. Schwartz explained that psychoanalysis is only one of many types of psychotherapy used in the treatment of a psychiatrist.We therefore do not think that petitioner's decision to participate in a form of psychotherapy other than psychoanalysis should be determinative. Respondent also argues that although petitioner's personality disorders might have *562 interfered with his ability to practice as a psychiatrist, petitioner's primary purpose in undergoing psychotherapy was to improve his personal relationships. Respondent therefore concludes that petitioner's psychotherapy expenses are non-deductible personal expenses. We disagree. We initially note that the record establishes that during the years in issue petitioner underwent psychotherapy for the treatment of certain personality disorders which interfered with his ability to practice psychiatry. The record, however, does not disclose whether petitioner's primary reason for undergoing psychotherapy during 1979 and 1980 was to improve his ability to practice as a psychiatrist or to improve his personal relationships. Nevertheless, under the appropriate regulations, petitioner's subjective intent is irrelevant. Prior to 1968, section 1.162-5(a)(1), Income Tax Regs., allowed a deduction for "education * * * undertaken primarily for the purpose of maintaining or improving skills required by the taxpayer in his * * * trade or business." The present regulations, however, allow a deduction for education that "[m]aintains or improves skills required by the individual in his employment *563 or other trade or business." Section 1,162-5(a)(1), Income Tax Regs. Thus, the present regulations apply an objective standard (i.e., whether the education improved petitioner's skills) rather than a subjective standard (i.e., whether petitioner undertook the education primarily to improve his skills). Petitioner's primary reason for undergoing psychotherapy is therefore not determinative of the issue. Finally, respondent argues that the amount of expenses petitioner incurred in undergoing psychotherapy during the years in issue was not reasonable. Respondent further argues that petitioner has not established the portion of the expenses which would be reasonable. Respondent therefore concludes that the entire deduction should be disallowed. We, however, do not think that petitioner incurred an unreasonable amount of expenses in undergoing psychotherapy during the years in issue. Petitioner testified that during 1979 he paid Dr. Beukenkamp $50 per group psychotherapy session and $100 per individual psychotherapy session. He further testified that during 1980 he paid Dr. Beukenkamp $75 per group session and $125 per individual session. At trial, petitioner's expert, Dr. Schwartz, *564 testified that Dr. Beukenkamp's fee schedule was not unreasonable. On the other hand, respondent's expert, Dr. Portnow, stated that Dr. Beukenkamp's fee schedule was unreasonable. Both experts agreed, however, that New York psychiatrists charged various fees for their psychiatric services. Dr. Portnow further agreed that during 1979 at least one New York psychiatrist charged a fee of $150 per individual psychotherapy session. He also stated that a psychiatrist's fee for group therapy is generally equal to onehalf of the amount he or she charges for individual therapy. In the instant case, because the fees charged by Dr. Beukenkamp during the years in issue did not exceed $150 per individual session or $75 per group session, we refuse to find that the amount of expenses petitioner incurred in undergoing psychotherapy was unreasonable. The record clearly establishes that Dr. Beukenkamp was a highly respected psychiatrist and psychoanalyst with more than 30 years of psychiatric experience. He was also the author of a book and numerous articles dealing with a wide range of psychiatric topics as well as a member of several prestigious psychiatric associations. The record further *565 establishes that Dr. Beukenkamp effectively treated petitioner's personality disorders. Indeed, petitioner testified that he "couldn't imagine finding anyone who would be as helpful for me personally or professionally." Thus, although we recognize that Dr. Beukenkamp's fees were somewhat high, we do not find it unreasonable that he would charge a premium for his services in light of his years of experience, his psychiatric expertise and his excellent reputation. We therefore do not believe that the amount of expenses petitioner incurred in undergoing psychotherapy during the years in issue was unreasonable. In conclusion, we are satisfied that Dr. Beukenkamp's psychotherapy methods effectively treated petitioner's personality disorders and, therefore, improved petitioner's ability to practice as a psychiatrist. We are also satisfied that the amount of expenses petitioner incurred in undergoing psychotherapy was not unreasonable. Thus, based on the record before us and relying on Voigt v. Commissioner,supra, and Iglesias v. Commissioner,supra, we find that petitioner is entitled to deduct psychotherapy expenses of $13,000 and $27,175 in *566 1979 and 1980, respectively, as ordinary and necessary business expenses under section 162(a). We therefore need not consider petitioner's alternative argument that such expenses are deductible as medical expenses under section 213. Issue 2. Telephone Expenses
The next issue for decision is the amount of telephone expenses, if any, petitioner is entitled to deduct as an ordinary and necessary business expense under section 162(a). At trial, petitioner testified that during the years in issue he maintained two telephones in his apartment, one for business use and one for personal use. Petitioner contends that because he only used the business telephone to speak with his patients and to receive treatment from Dr. Beukenkamp, he is entitled to deduct all of the expenses he incurred in connection with the use of his business telephone under section 162(a). Respondent contends that petitioner has not substantiated his business use of the telephone. Respondent's determination is presumtively correct, and petitioner bears the burden of proving error in this determination.Rule 142(a). To substantiate his business use of the telephone, petitioner presented at trial (1) copies *567 of monthly bills he received during 1979 and 1980 for his use of the business telephone, (2) cancelled checks showing payment of those bills and (3) statements itemizing each long distance telephone call he made from the business telephone during 1980. these itemized statements establish that petitioner incurred expenses of $1,553.10 in calling Dr. Beukenkamp in Costa Rica during 1980. Petitioner testified at trial that he underwent psychotherapy with Dr. Beukenkamp during these calls. The regularity of the date and time of these calls and the uniformity of their length corroborate petitioner's testimony.We therefore find that petitioner incurred telephone expenses of $1,553.10 in undergoing psychotherapy with Dr. Beukenkamp during 1980. Consequently, because the psychotherapy improved petitioner's skills as a psychiatrist, he is entitled to deduct the telephone expenses he incurred in undergoing psychotherapy as an ordinary and necessary business expense under section 162(a). Petitioner did not present any records establishing the amount of telephone expenses he incurred in connection with the treatment of his patients during 1980. Nevertheless, based on petitioner's testimony *568 we are satisfied that he incurred some telephone expenses in connection with the treatment of his patients. Making "as close an approximation as [we] can, bearing heavily if [we] choose upon the taxpayer whose inexactitude is of his own making," Cohan v. Commissioner,39 F.2d 540, 544 (2d Cir. 1930), we find that petitioner incurred 50 percent of the remaining telephone expenses he claimed on his 1980 return in connection with the treatment of his patients. Consequently, we hold that petitioner is entitled to deduct telephone expenses of $437.95 in connection with the treatment of his patients during 1980. Although petitioner presented copies of his monthly telephone bills for 1979, he did not present itemized statements of the long distance telephone calls he made during that year. Thus, we are unable to determine from the records presented at trial the amount of telephone expenses petitioner incurred in undergoing psychotherapy during 1979.Petitioner testified, however, that from October, 1979, through December, 1979, he telephoned Dr. Beukenkamp in Costa Rica approximately once a week. Although petitioner presented no evidence of the expenses he incurred *569 in amking these telephone calls, the record establishes that during 1980 petitioner paid an average of $37.88 per telephone call he made to Dr. Beukenkamp in Costa Rica. Thus, based on petitioner's testimony and relying on Cohan v. Commissioner,supra, we find that he made 12 telephone calls to Dr. Beukenkamp in Costa Rica during 1979 at a cost of $37.88 per telephone call. We therefore hold that petitioner incurred deductible telephone expenses of $454.56 in undergoing psychotherapy with Dr. Beukenkamp during 1979. Similarly, petitioner presented no records of the amount of telephone expenses he incurred during 1979 in connection with the treatment of his patients. As stated above, however, based on petitioner's testimony, we are satisfied that he incurred some telephone expenses in connection with the treatment of his patients. Thus, relying on Cohan v. Commissioner,supra, we find that petitioner incurred 50 percent of the remaining telephone expenses he claimed on his 1979 return in connection with the treatment of his patients. Consequently, we hold that petitioner is entitled to deduct telephone expenses of $594.22 in connection with *570 the treatment of his patients during 1979. Issue 3. Additions to Tax for Fraud
The next issue for decision is whether petitioner is liable for additions to tax for fraud under section 6653(b). Respondent contends that the record establishes that petitioner took an affirmative role in a complex scheme to avoid taxation. We disagree. Fraud is defined as an intentional wrongdoing designed to evade tax believed to be owing. Professional Services v. Commissioner,79 T.C. 888, 930 (1982). Respondent bears the burden of proving fraud by clear and convincing evidence. Miller v. Commissioner,51 T.C. 915 (1969); section 7454(a); Rule 142(b). Although respondent may meet this burden with circumstancial evidence, Stephenson v. Commissioner,79 T.C. 995, 1005, 1006 (1982), affd. 748 F.2d 331 (6th Cir. 1984), fraud cannot be inferred from a mere inadvertent understatement of income, Holland v. United States,348 U.S. 121, 137 (1954), or from a deficiency in taxes due to an honest mistake or poor judgment. Iley v. Commissioner,19 T.C. 631, 635 (1952). The evidence in this case clearly *571 establishes that petitioner incurred substantial expenses in undergoing psychotherapy with Dr. Beukenkamp during the years in issue. Moreover, we have found that Dr. Beukenkamp's psychotherapy methods were effective and improved petitioner's skills as a psychiatrist. Although we have also found that petitioner's records are insufficient to substantiate the entire amount of his claimed expenses, this finding, standing alone, is not clear and convincing evidence that petitioner intentionally overstated his deductions to avoid a tax he believed to be owing. Valetti v. Commissioner,260 F.2d 185, 188 (3rd Cir. 1958), affg. in part and revg. in part 28 T.C. 692 (1957). Consequently, on the record before us, we find that respondent has not established fraud by clear and convincing evidence, and therefore, petitioner is not liable for additions to tax for fraud under section 6653(b). Issue 4. Additions to Tax under Section 6653(a)
The final issue for decision is whether petitioner is liable for additions to tax under section 6653(a) for negligence or intentional disregard of rules and regulations. In the notice of deficiency respondent determined alternatively *572 that petitioner was liable for additions to tax under section 6653(a) for taxable year 1980. Respondent contends that petitioner's failure to keep adequate records of his psychotherapy expenses support this determination. We, however, think that petitioner maintained sufficient records of the expenses he incurred in undergoing psychotherapy during 1980 to avoid additions to tax under section 6653(a). Petitioner presented at trial cancelled checks payable to Dr. Beukenkamp in sufficient amounts to support the deductions he claimed on his 1979 and 1980 Federal income tax returns. Although we have found that these checks, standing alone, are insufficient to substantiate the entire amount of the claimed deductions, we have allowed a substantial portion of the claimed deductions based on these checks and diaries of appointments petitioner maintained during 1979 and 1980. The mere fact that we do not consider petitioner's records adequate to substantiate all of the deductions he claimed during the years in issue does not require us to find that petitioner's underpayment of tax was due to negligence or intentional disregard of respondent's rules and regulations. Robinson v. Commissioner,51 T.C. 520, 542 (1968), *573 mod. per curiam 422 F.2d 873 (9th Cir. 1970). We therefore hold that petitioner is not liable for the additions to tax for negligence provided in section 6653(a). To reflect the foregoing, Decisions will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 in effect for the years in question. All rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioner testified at trial that in addition to Dr. Beukenkamp's professional qualifications, he was also interested in Dr. Beukenkamp's personal characteristics. Petitioner stated that Dr. Beukenkamp's status as an Olympic athlete reflected on "the caliber of the man."↩
3. The record contains itemized statements of the long distance telephone calls made by petitioner during 1980. The record, however, does not contain itemized statements of the long distance calls made by petitioner during 1979.↩
4. Respondent determined these amounts as follows: ↩
1979
85 individual sessions at $100 per session
$ 8,500
90 group sessions at $50 per session
4,500
TOTAL
$13,000
1980
101 individual sessions at $125 per session
$12,625
190 groups sessions at $75 per session
14,250
TOTAL
$26,875